UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STACI DUNCAN,

Plaintiff,

vs. Case No. 3:09-cv-542-J-MCR

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

Defendant.
_______________________________________/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on June 14, 2006, alleging an inability to work since August 17, 2005. (Tr. 105-110). The Social Security Administration ("SSA") denied the initial application on September 27, 2006, and again upon reconsideration on February 27, 2007. (Tr. 9, 48-51, 54-56). The Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on April 22, 2008. (Tr. 9, 20, 57, 64, 72). On June 25, 2008, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 6-19). The Plaintiff requested review, which the

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 8).

Appeals Council denied, on April 17, 2009. (Tr. 1-5). Accordingly, the ALJ's June 25, 2008, decision is the final decision of the Commissioner. The Plaintiff timely filed her Complaint in the United States District Court on June 16, 2009. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since January 23, 2006, (Tr. 9, 110) due to residual limitations and pain arising from surgery of the right shoulder, bilateral carpel tunnel syndrome ("CTS"), adjustment disorder, bilateral knee chondromalacia, headaches, and cervical discogenic pain. (Tr. 204). The ALJ additionally determined Plaintiff has severe impairments arising from anxiety disorder, affective disorder, and diabetes millitus. (Tr. 11).

### B. Summary of Evidence Before the ALJ

Plaintiff was born on February 3, 1965, and was forty-three years of age on the date of the ALJ's decision. (Tr. 23). She has a highschool education (Tr. 23, 115) and past relevant work experience as a letter carrier, data entry clerk, secretary, and retail store manager (Tr. 17-18, 25, 117).

Plaintiff's medical history is discussed in the ALJ's decision and therefore, will not be repeated in full, but will be summarized herein.[2] Plaintiff alleged the development of anterior chest pain, as well as neck and shoulder pain originating on August 17, 2005. (Tr. 298). With persistent pain, Plaintiff sought treatment on September 8, 2005, from Michael Janssen, M.D. (Tr. 454). Dr. Janssen's initial radiology report was negative, so he referred Plaintiff to Thomas Snyder, M.D. for a neurological evaluation. (Tr. 298). On September 9,

---

[2] Because Plaintiff's mental impairments were not raised on appeal, the Court will not discuss them.

2005, Dr. Snyder conducted a spinal Magnetic Resonance Imaging ("MRI") test, which revealed straightening of the cervical spine. Id. Dr. Snyder also suspected right thoracic outlet syndrome and recommended a regime of physical therapy. (Tr. 299). On September 14, 2005, Plaintiff returned to Dr. Snyder with continued symptoms. (Tr. 238). Dr. Snyder reported an unremarkable monopolar electromyogram ("EMG") of the right arm and borderline CTS in the right wrist. Id.

On October 25, 2005, at the request of Dr. Janssen, Plaintiff saw William G. Pujadas, M.D. for an orthopedic consultation. (Tr. 227). X-rays did not reveal any acute fractures or dislocations, so Dr. Pujadas conducted an MRI of Plaintiff's right shoulder and administered an injection of 1cc each of Xylocaine and Depo Medrol. Id. The shoulder MRI revealed a bone spur. (Tr. 240). On October 28, 2005, Plaintiff returned to Dr. Snyder, reporting continued shoulder pain extending to the neck and anterior shoulder. (Tr. 239). At this point, Dr. Snyder noted the cause of Plaintiff's pain was uncertain, but he opined thoracic outlet syndrome was possible. Id. On November 10, 2005, Dr. Janssen recognized decreased strength in the right arm to 3/5. (Tr. 450). On December 1, 2005, when seeing Dr. Snyder, Plaintiff stated the injection from Dr. Pujadas and the physical therapy were not beneficial. (Tr. 240). On December 14, 2005, Dr. Snyder diagnosed Plaintiff with right shoulder and neck pain with possible thoracic outlet syndrome, and recommended she not return to work. (Tr. 236, 240).

On December 29, 2005, Dr. Janssen examined Plaintiff and observed decreased strength in the right arm to 4/5. (Tr. 452). On the same day, Dr. Janssen authored a narrative summarizing Plaintiff's treatment to that point and provided an opinion regarding Plaintiff's ability to work. (Tr. 448-49). He noted Dr. Snyder's neurological evaluation

resulted in normal results from nerve conduction tests, EMG tests, a cervical MRI, and a shoulder MRI. (Tr. 448). The only condition objectively detected was CTS of the right wrist; however, thoracic outlet syndrome remained a possible diagnosis. Id. Regarding Dr. Pujadas's orthopedic evaluation, Dr. Janssen noted the existence of a bone spur and the unresponsive injections. Id. Additionally, Dr. Janssen detailed Plaintiff's subjective evaluation of her condition, noting her inability to conduct simple activities and household tasks, such as combing her hair, driving, cooking, and doing laundry. Id. Dr. Janssen concluded that because such minor activities caused extensive pain Plaintiff would, at least temporarily, be unable to work. (Tr. 449).

On January 3, 2006, Plaintiff saw Dr. Pujadas for a follow-up to the unsuccessful pain injections. (Tr. 224). Plaintiff agreed to arthroscopic AC joint resection surgery, which took place on February 9, 2006. (Tr. 224, 302). The surgery revealed more pathology than anticipated: a torn labrum, a very large bone spur, and a part of Plaintiff's collar bone was removed to prevent rubbing against the rotator cuff. (Tr. 234).

On February 25, 2006, Dr. Janssen completed a Residual Functional Capacity ("RFC") questionnaire. (Tr. 433-437). He diagnosed Plaintiff with right and left CTS, right shoulder pain, right AC joint arthritis, right lateral epicondylitis, and GERD. (Tr. 433). However, the only symptoms disclosed were right shoulder and elbow pain, as well as numbness of the right hand. Id. The clinical findings listed an abnormal nerve conductor test and bone spurs on the right shoulder. Id. These bone spurs had been surgically removed on February 9, 2006. (Tr. 302). Dr. Janssen opined Plaintiff could rarely lift and/or carry less than ten pounds, but never more than ten pounds. (Tr. 436). The RFC also stated Plaintiff could stand or sit for more than two hours at one time and at least six hours

during an eight-hour work day, but would sometimes require unscheduled breaks. (Tr. 435). Dr. Janssen concluded Plaintiff would likely be absent from work more than four days per month. (Tr. 436).

On March 21, 2006, Dr. Pujadas noted Plaintiff's continued discomfort in the shoulder, but remarked she was doing well after the surgery. (Tr. 221). On March 24, 2006, Dr. Janssen observed a decreased range of motion and noted Plaintiff's complaints about continued shoulder pain, but ruled out thoracic outlet syndrome as a diagnosis. (Tr. 442-43). Unrelated to the shoulder, Dr. Janssen administered an injection into the right wrist to address pain caused by the CTS. (Tr. 234, 443).

On April 18, 2006, Dr. Pujadas took x-rays of Plaintiff's right shoulder, which revealed good compression and distal clavicle resection. (Tr. 211). At her April 27, 2006, examination by Dr. Janssen, Plaintiff reported continued weakness in her right shoulder and an inability to sleep on it due to the pain. (Tr. 440). On May 16, 2006, Dr. Pujadas noted Plaintiff's difficulty using her arm above chest level and recommended she remain out of work unless a sedentary position became available because she was unable to lift enough weight to perform her normal job functions. (Tr. 210).

On July 3, 2006, Dr. Snyder opined the injection he administered in March was improving Plaintiff's CTS and consequently CTS release would not be necessary at that time. (Tr. 233). On July 6, 2006, Dr. Snyder completed an RFC questionnaire. (Tr. 228-32). Dr. Snyder's diagnosis listed right CTS, right shoulder pain, and right thoracic outlet syndrome. (Tr. 228). Plaintiff characterized her pain as 5-6/10 but no other clinical or objective findings were listed. Id. Dr. Snyder opined Plaintiff could never lift and/or carry ten pounds with her right arm. (Tr. 231). He further determined Plaintiff could sit for more than

two hours at one time and at least four hours during an eight-hour work day, but could only stand and/or walk for one hour at a time and two hours during an eight-hour work day. (Tr. 230). Dr. Snyder estimated Plaintiff would likely be absent one day per month. (Tr. 231).

On September 19, 2006, Vaduvur Narayan, M.D., a state agency doctor, reviewed the medical records of doctors Janssen, Snyder, and Pujadas in order to provide an RFC assessment. (Tr. 248-55). Dr. Narayan opined Plaintiff could occasionally and frequently lift and/or carry ten pounds. (Tr. 249). Further, Dr. Narayan opined Plaintiff could sit, stand and/or walk six hours in an eight-hour work day with normal breaks. Id. Although unable to determine the effects of the CTS, Dr. Narayan found Plaintiff credible and felt the severity of her symptoms was consistent with the medical and nonmedical evidence. (Tr. 253).

On September 22, 2006, Plaintiff underwent another cervical MRI, this time revealing disc bulges at cervical nerves C5-C6 and C6-C7. (Tr. 282). However, Dr. Snyder noted her mobility remained normal, with no evidence of neural foraminal narrowing or nerve compression. (Tr. 278, 281). Dr. Snyder ordered a CAT scan, which occurred on October 26, 2006, and revealed no evident thoracic outlet obstructions of vascular structures. (Tr. 277). On January 9, 2007, Plaintiff underwent a cervical discogram at the recommendation of Javier Garcia-Bengochea, M.D. (Tr. 313). The exam revealed Plaintiff’s neck pain was associated with a central annular tear of cervical nerve C5-6, and her shoulder pain was associated with a central annular tear of cervical nerve C6-7. Id. Dr. Garcia-Bengochea advised Plaintiff she could have surgery, but Plaintiff declined. (Tr. 312, 468).

On February 20, 2007, John E. Long, M.D. completed an RFC assessment at the request of the state. (Tr. 343- 50). Dr. Long’s primary diagnosis was consistent with those of Dr. Snyder and Dr. Janssen: right shoulder pain and right CTS. (Tr. 343). Dr. Long

opined Plaintiff could occasionally lift and/or carry twenty pounds and could frequently lift and/or carry ten pounds. (Tr. 344). Dr. Long further opined Plaintiff could sit, stand, and/or walk for six hours during an eight-hour work day. Id. Dr. Long concluded Plaintiff's shoulder was improving and she could perform light duty work without prolonged standing or walking. (Tr. 345). This determination was based, in part, because Dr. Long concluded the severity of Plaintiff's symptoms exceeded the expected severity based on the medically determinable impairments. (Tr. 348).

On June 1, 2007, Plaintiff was diagnosed with diabetes mellitus and began insulin therapy and a nutritional management program. (Tr. 377-85). On September 6, 2007, Plaintiff returned to Dr. Snyder complaining the cervical discogram conducted on January 1, 2007, exacerbated her pain, but Plaintiff still declined surgery. (Tr. 468).

**C. Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ must follow five steps when evaluating a claim of disability. 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's

impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(g), 1560(c). The plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. 11). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, January 23, 2006. Id. At steps two and three, the ALJ held Plaintiff had severe impairments of "disorders of the spine; right shoulder impairment; carpal tunnel syndrome; affective disorder; anxiety disorder; diabetes mellitus." Id. However, these impairments, singularly or in combination, did not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12). The ALJ found Plaintiff able to participate in a full range of daily and social functions. Id. The ALJ determined Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[3] with certain non-exertional and exertional impairments." (Tr. 13). The ALJ noted Plaintiff:

> needs a sit-stand option; needs to avoid ladders or unprotected heights; needs to avoid operation of heavy moving machinery; needs a low stress work environment; [can] only occasionally bend, crouch, kneel, stoop, squat or crawl; needs to avoid push and pull of arm controls with the right; needs to avoid overhead reaching with the right arm; [can] only occasionally finger and handle with the right

[3] "Sedentary work" is defined as work in which walking and standing are only occasionally required and which does not involve lifting more than ten pounds. 20 C.F.R. § 404.1567(a).

dominant hand.

Id. At step four, based on the testimony of the vocational expert ("VE"), the ALJ found Plaintiff was unable to perform any of her past relevant work. (Tr. 17-18). At step five, the VE testified that the additional limitations placed by the ALJ would not prevent the Plaintiff from conducting sedentary work. (Tr. 18). Finally, the ALJ considered the Plaintiff's age, education, work experience, and RFC and concluded there were jobs available in the national economy Plaintiff could perform. (Tr. 19). Accordingly, the ALJ found Plaintiff was not disabled. Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as a finder of fact and even if the reviewer finds the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan,

932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining that a court must scrutinize the entire record to determine the reasonableness of the factual findings).

**B. Issues on Appeal**

Plaintiff argues two issues on appeal. (Doc. 11, pp.12-21). First, Plaintiff argues the ALJ failed to consider the RFC from Dr. Snyder. (Doc. 11, pp. 13-17). Specifically, Plaintiff contends the ALJ was required to recognize Dr. Snyder's opinion as that of a treating physician and state the weight he afforded to the RFC. (Doc. 11, pp. 16-17). The Commissioner responds by arguing the ALJ properly discounted Dr. Snyder's opinion because it was not supported by objective medical evidence, was inconsistent with Dr. Snyder's own prior findings, and relied too heavily on Plaintiff's subjective complaints. (Doc. 12, pp. 6-8). Further, the Commissioner argues any error that occurred because the ALJ failed to state the of weight of Dr. Snyder's opinion is harmless and does not warrant remand or reversal. (Doc. 12, p. 8).

Second, Plaintiff argues the ALJ erred by not giving Dr. Janssen's opinion any special weight. (Doc. 12, p. 17), (Tr. 16). Plaintiff recognizes the ALJ provided reasons supporting his decision not to value Dr. Janssen's opinion, as required by 20 C.F.R. § 404.1527(d), but nevertheless, contends those reasons were "legally deficient and not supported by substantial evidence." (Doc. 11, p. 17). The Commissioner responds by arguing substantial evidence supports the ALJ's conclusion that Dr. Janssen's opinion was conclusory, inconsistent with his own examination notes, and contradicted by other medical opinions

that were more consistent with the record evidence. (Doc. 12, pp. 8-9).

The Court will address each of these arguments.

**1. Whether a failure by the ALJ to recognize the opinion of Dr. Snyder or state the weight assigned to his opinion constitutes reversible error.**

Plaintiff argues the ALJ erred by failing to consider the medical opinion evidence provided by Dr. Snyder and failing to state what, if any weight, he accorded to those opinions. (Doc. 11, pp.12-17). Specifically, Plaintiff contends the ALJ failed to recognize the RFC completed by Dr. Snyder on July 6, 2006. (Doc. 11, p. 14), (Tr. 228-32). The Commissioner acknowledges Dr. Snyder treated Plaintiff for right shoulder and wrist pain from September 2005 through September 2007. (Tr. 6). Dr. Snyder examined Plaintiff on no less than eight occasions during that time frame (Tr. 233, 238-40, 278, 281, 298, 468) and the Commissioner makes no argument that Dr. Snyder should not be considered a treating source as defined by 20 C.F.R. § 404.1502. This Court has reviewed the medical evidence of record and concludes the ALJ properly considered Dr. Snyder's opinions; however, the ALJ erred by failing to state the weight he assigned to the opinions.

The ALJ has the sole responsibility of resolving conflicts within the evidence and determining a claimant's RFC. 20 C.F.R. § 404.1546(c). When making a disability determination, the ALJ is required to consider all of the evidence in the claimant's record. 20 C.F.R. § 404.1520(a)(3). Generally, the ALJ will give more weight to opinions from treating sources than from non-treating sources. 20 C.F.R. § 404.1527(d)(2). In fact, absent a showing of good cause, the ALJ must give the opinion of a treating physician substantial or considerable weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Accordingly, the ALJ may give less than substantial weight to the opinion of a

treating physician, but failing to state the reasons for doing so constitutes reversible error. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

Although the ALJ is required to consider all of the evidence, it is not necessary to discuss all of the evidence presented. However, the ALJ must explain why he rejected any significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In this explanation, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). The Court cannot ensure a limited and meaningful review "if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." Id. Indeed, in the absence of any explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

This Court finds there is sufficient evidence to indicate the ALJ properly considered Dr. Snyder's RFC and his medical opinions as a whole. Plaintiff does not dispute the ALJ referenced, indeed quoted from, Dr. Snyder's July 16, 2006 RFC assessment. (Doc. 11, p. 19). Specifically, the ALJ referred to Dr. Snyder's opinion as being consistent with the medical evidence of record when he articulated his reason for discounting Dr. Janssen's opinion. (Tr. 16). The ALJ also relied on Dr. Snyder's report dated July 3, 2006 while assessing the impact of right shoulder surgery on Plaintiff's strength and range of motion. (Tr. 15). Moreover, the ALJ cited Dr. Snyder's opinions spanning from May 18, 2006 to September 6, 2007 regarding Plaintiff's CTS and reported levels of pain. Id. However, with regard to Dr. Snyder's RFC assessment, the ALJ did not discuss any of Dr. Snyder's medical opinions and did not specifically state what weight he assigned to the assessment.

(Tr. 16-17).

The Court finds Dr. Snyder's RFC assessment to be significantly probative evidence because it is inconsistent with the opinions of the state's consulting physicians, Dr. Narayan and Dr. Long, whom the ALJ relied upon to establish Plaintiff's RFC. (Tr. 17). Dr. Narayan examined the medical evidence of record and rendered a functional assessment on September 19, 2006. (Tr. 248-55). Dr. Narayan opined Plaintiff could lift and/or carry ten pounds occasionally and frequently. (Tr. 17, 249). Dr. Long examined the record and provided his assessment on February 20, 2007. (Tr. 343-50). Dr. Long opined Plaintiff could occasionally lift and/or carry twenty pounds and could frequently lift and/or carry ten pounds. (Tr. 344). These opinions are in stark contrast to Dr. Snyder's opinion that Plaintiff could never lift ten pounds. (Tr. 231). Likewise, Dr. Long and Dr. Narayan both opined Plaintiff could sit, stand, and/or walk for six hours in an eight-hour workday. (Tr. 249, 344). However, Dr. Snyder's assessment indicated Plaintiff could only sit for two hours at one time and only four hours in an eight-hour work day and could stand for only one hour at a time, for a total of two hours in an eight-hour work day. (Tr. 230).

These direct contradictions reveal Dr. Snyder's assessment was significant and probative. As such, the ALJ was required to at least explain his reason for rejecting Dr. Snyder's assessment. This omission is an error and inconsistent with the Regulations, specifically 20 C.F.R. § 404.152(d)(2), which provides "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." The failure to do so here constitutes reversible error. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).

Despite the Commissioner's argument to the contrary, the Court does not find this

error harmless.  Harmless errors are those that do not prejudice the Plaintiff.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error is harmless when it does not impact the determination of disability).  The Court is unable to say an error is harmless when the correct application would contradict the ALJ's ultimate findings.  Miller v. Barnhart, 182 F. App'x. 959, 964 (11th Cir. 2006) (finding ALJ's error was not harmless when he failed to state the reason for giving less weight to the Plaintiff's treating physician and instead relied on the evaluation of a non-treating physician).  Because Dr. Snyder's assessment directly contracted Dr. Narayan's and Dr. Long's assessments, upon which the ALJ relied in formulating Plaintiff's RFC, this Court does not find the error harmless.

The Commissioner's arguments that the ALJ had good cause to give Dr. Snyder's medical opinion less than substantial or considerable weight are also not persuasive.  The Commissioner argues Dr. Snyder's opinion was inconsistent with his own records, was unreliable, and was based on Plaintiff's subjective reports of pain.  (Doc. 12, p. 7-8).  While these reasons may indeed be proper reasons to discredit the opinions of Dr. Snyder, the ALJ did not provide them as his reasons.  Instead, the ALJ failed to provide any guidance as to what if any weight he gave to Dr. Snyder's opinions.  As the Court must focus its review on the reasons provided by the ALJ for rejecting the evidence and not the post hac justifications presented by the Commissioner, the undersigned concludes the ALJ erred in failing to state the level of weight afforded to Dr. Snyder's opinions.  See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984)(court declined "to affirm simply because some rationale might have supported the ALJ's conclusion" noting "[such an approach would not advance the ends of reasoned decision making").

**2.    Whether the ALJ properly evaluated the medical opinion of Plaintiff's treating physician, Dr. Janssen.**

Plaintiff argues the medical opinion Dr. Janssen offered in his RFC questionnaire, completed on February 25, 2006, was entitled to special deference and substantial weight. (Doc. 11, p. 17).  Dr. Janssen began treating the Plaintiff in 1994 and his status as a treating physician was recognized by the ALJ.  (Tr. 16, 321).  Accordingly, the ALJ was required to state good cause, as recognized by the Eleventh Circuit, for declining to afford substantial or considerable weight to Dr. Janssen's opinion.  Phillips, 357 F.3d at 1240-41.  Good cause exists when: (1) the "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Id.  In this case, the ALJ found Dr. Janssen's opinion was not entitled to any special weight and he provided multiple reasons for reaching this conclusion.  (Tr. 16-17).

The ALJ found there was little "documentation, explanation, or medically acceptable clinical and laboratory diagnostic techniques" corroborating Dr. Janssen's opinion.  (Tr. 16). The ALJ determined Dr. Janssen relied solely on Plaintiff's subjective reports, which were not credible.  Id.  The ALJ also stated Dr. Janssen's opinion reflected only minimal pain complaints and his treatment notes did not reflect the objective abnormalities that could reasonably account for the restrictions in his assessment.  Id.  Finally, the ALJ stated Dr. Janssen's opinion was contradicted by other medical opinions more consistent with the medical evidence of record.  Id.  For all of these reasons, the Commissioner determined "the record fail[ed] to establish the opinion of Dr. Janssen deserve[d] special deference."  Id. Plaintiff argues the ALJ's reasons for giving little weight to Dr. Janssen's opinion are legally

deficient and not supported by substantial evidence. (Doc. 11, p. 17). Specifically, Plaintiff argues Dr. Janssen's RFC questionnaire was corroborated by objective evidence. Id. Also, Plaintiff argues the ALJ mischaracterized the record when concluding Dr. Janssen's treatment notes did not reveal enough objective abnormalities. (Doc. 11, p. 18). Plaintiff further argues Dr. Janssen did not rely solely on Plaintiff's subjective reports. Id. Finally, Plaintiff argues it was improper for the ALJ to rely on the opinions of Dr. Snyder and Dr. Pujadas as opinions contradicting Dr. Janssen. (Doc. 11, pp. 19-20). The Court has considered Plaintiff's arguments and finds the ALJ properly discounted Dr. Janssen's opinion.

First, the Court finds there is substantial evidence indicating Dr. Janssen's opinion was not corroborated by objective findings. On December 29, 2005, Dr. Janssen wrote a letter summarizing Plaintiff's treatment. (Tr. 448-49). In the letter, he stated all the objective tests—nerve conduction tests, EMG tests, a cervical MRI, and a shoulder MRI—were negative except for right CTS. (Tr. 16, 448). Likewise, on December 14, 2005, Dr. Snyder wrote a letter stating the cause of Plaintiff's pain was uncertain. (Tr. 236). Also, Dr. Narayan noted in his RFC assessment on September 19, 2006, that he was unable to determine the origin of Plaintiff's CTS. (Tr. 253-54).

In taking the position that Dr. Janssen's opinion is indeed based on objective findings, Plaintiff argues the ALJ mischaracterized the record by failing to note three instances in which Dr. Janssen referenced decreased strength and decreased range of motion in his treatment notes. (Doc. 11, p. 19). The Court does not find this argument persuasive. First, the ALJ stated there was very little to corroborate Dr. Janssen's opinion, he did not state there was nothing to corroborate it. (Tr. 16). Therefore, it is reasonable the ALJ took this

evidence into consideration. Second, only one of the examples Plaintiff provided occurred after her shoulder surgery.[4] Moreover, in the post-surgery treatment notes, Dr. Janssen noted it had only been six weeks since the surgery and Plaintiff was still sore. (Tr. 442). Last, the ALJ's exertional and non-exertional limitations are more than sufficient to accommodate Plaintiff's decreased strength and lost range of motion. (Tr. 13). Thus, the undersigned finds substantial evidence supports the ALJ's conclusion that there was very little to corroborate Dr. Janssen's opinion.

Next, Plaintiff argues it was error for the ALJ to discredit Dr. Janssen's opinions on the grounds that they were based on Plaintiff's subjective complaints of pain. In the Eleventh Circuit, Plaintiff's subjective reports can establish disability if the ALJ finds Plaintiff credible. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (applying the pain standard to subjective conditions other than pain). If the ALJ discredits Plaintiff's subjective claims, he must state his reasons for doing so, or as a matter of law, the claims must be accepted as true. Id. In this instance, the ALJ expressly stated Plaintiff's lack of credibility was a basis for discounting Dr. Janssen's opinion. (Tr. 16). Additionally, the ALJ stated explicit and adequate reasons for finding Plaintiff lacked credibility. The ALJ considered several factors including Plaintiff's daily living and social activities, the intensity of her pain, the infrequency with which she refilled her prescriptions, and the failure to report any side-effects from her prescriptions. (Tr. 14-15). The Court finds the ALJ properly discounted Dr. Janssen's opinion because it was based on Plaintiff's subjective reports, which the ALJ

[4] Plaintiff's shoulder surgery took place on February 9, 2006. (Tr. 302). The alleged mischaracterizations relate to Dr. Janssen's treatment notes from November, 10, 2005, December 29, 2005, and March 24, 2006. (Tr. 19).

found lacked credibility.

Finally, Plaintiff argues it was inappropriate for the ALJ to rely on the opinions of Dr. Snyder or Dr. Pujadas when determining Dr. Janssen's opinion was contradicted by other opinions more consistent with the medical evidence of record.  (Doc. 11, pp. 19-20). Specifically, Plaintiff contends the ALJ should not have used Dr. Snyder's opinion to refute Dr. Janssen because the ALJ failed to recognize Dr. Snyder's opinion when determining the Plaintiff's RFC.  (Doc. 11, p. 19).  Further, Plaintiff argues the ALJ mischaracterized Dr. Pujadas's opinions and should not have relied on them for the same reasons the ALJ discounted Dr. Janssen's opinion.  (Doc. 11, pp. 20).

As stated previously, when the ALJ failed to take Dr. Snyder's medical opinion into consideration he erred.  However, it appears the ALJ agreed with a comment Dr. Snyder made in his RFC questionnaire suggesting Dr. Pujadas would be better suited to provide an opinion regarding Plaintiff's disability and ability to work.  (Tr.16, 232).  Apparently based on this suggestion, the ALJ used the opinions of Dr. Snyder and Dr. Pujadas to demonstrate Dr. Janssen's opinion was not consistent with other medical evidence of record.  (Tr. 16). The ALJ is correct, there are portions of Dr. Snyder's opinion that contradict Dr. Janssen's opinion.  Specifically, Dr. Snyder opined Plaintiff would likely miss one day per month due to her impairments, yet Dr. Janssen stated Plaintiff would likely be absent more than four days per month.  (Tr. 231, 436).  However, the record also reflects consistencies between their opinions regarding Plaintiff's ability to lift ten pounds or more.  Dr. Snyder opined Plaintiff could never lift ten pounds and Dr. Janssen opined Plaintiff could only rarely lift ten pounds, but could never lift more weight.  (Tr. 231, 433).  Although not completely harmonious, this similarity between Dr. Snyder and Dr. Janssen is noteworthy because they are both treating

physicians and their opinions regarding Plaintiff's strength are substantially contradicted by the state's consulting physicians, both of whom opined Plaintiff could frequently lift more than ten pounds.[5] (Tr. 249, 344).

While the ALJ's reliance on Dr. Snyder's opinion for the narrow purpose of discounting Dr. Janssen's opinion may be questionable, deferring to Dr. Pujadas was appropriate. The ALJ is required to "give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). Thus, the ALJ is permitted to afford greater weight to Dr. Pujadas because he is an orthopedic specialist, than to Dr. Janssen, who is Plaintiff's primary care physician. In arguing the ALJ erred in relying on Dr. Pujadas's opinions, Plaintiff claims the ALJ mischaracterized Dr. Pujadas's opinions. (Doc. 11, p. 20). The record reveals the ALJ did erroneously misstate the dates of Dr. Pujadas's opinions, but this error was harmless because it did not affect the ALJ's determination. Diorio, 721 F.2d at 728. The misstatement was regarding Plaintiff's restriction from raising her arms above shoulder level, an opinion Dr. Pujadas rendered prior to Plaintiff's surgery. (Tr. 223). Dr. Pujadas's opinion, that Plaintiff could perform sedentary work, was rendered after her surgery and consistent in time with the other assessments the ALJ considered. (Tr. 210). Moreover, Dr. Pujadas stated his opinion was based on Plaintiff's difficulty laying on her right shoulder and lifting the appropriate weight required for her job. Id. Thus, the evidence and record reveal it was proper for the ALJ to give more deference to Dr. Pujadas, as an orthopedic specialist, than to Dr. Janssen. Accordingly, the undersigned finds the ALJ did

[5] On February 20, 2007, Dr. Long opined Plaintiff could occasionally lift twenty pounds. (Tr. 344).

not err in discounting the opinions of Dr. Janssen.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. § 405(g). On remand, the ALJ shall (1) consider the July 6, 2006, functional assessment of Dr. Snyder and specify what, if any weight he gives it; (2) re-evaluate Plaintiff's RFC in light of this evidence; and (3) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the date of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of August, 2010.

Monte C. Richardson

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record